UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| VALERIE MONTONE, <br><br>　　　　　Plaintiff, <br><br>　　v. <br><br>CITY OF JERSEY CITY, ET AL., <br><br>　　　　　Defendants. | **Civil Action No. 6-280 (SRC)** <br> **Civil Action No. 6-3790 (SRC)** <br><br> **OPINION & ORDER** |
| JOHN ASTRIAB, ET AL., <br><br>　　　　　Plaintiffs, <br><br>　　v. <br><br>CITY OF JERSEY CITY, ET AL., <br><br>　　　　　Defendants. | |

**CHESLER**, District Judge

This matter comes before the Court upon the filing by Plaintiffs of several post-trial motions. Plaintiff Valerie Montone has filed a motion to mold the verdict to offset the negative tax consequences of a lump-sum award and for prejudgment interest (2:06-cv-280, Docket No. 351), to which the remaining Plaintiffs (collectively, the "Astriab Plaintiffs") have filed a supplemental brief in support. 2:06-cv-3790, Docket No. 216. The Astriab Plaintiffs have submitted an additional brief to correct for an error in the calculation of prejudgment interest for Plaintiff Ezio Scerbo. 2:06-cv-3790, Docket No. 218. Defendants have submitted the same opposition brief to both motions (2:06-cv-280, Docket No. 354; 2:06-3790, Docket No. 220, "Defs. Br."), and Plaintiff Montone has filed a reply brief. 2:06-cv-280, Docket No. 355. The

1

Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, this Court grants Plaintiffs' motion for prejudgment interest. This Court also grants Plaintiffs' motion to mold the verdict to offset the negative tax consequences of receiving a lump-sum award. Before determining the appropriate amount by which to mold the verdict to offset such tax consequences, this Court will grant Defendants leave to depose Plaintiffs' expert Kristin Kucsma regarding the methodology and calculations contained in her report, as well as leave to file an expert report in opposition.

## I. Background

This case concerns an employment dispute between Plaintiffs, all retired police sergeants of the Jersey City Police Department, and the City of Jersey City, its former mayor Jerramiah Healy, and its former police chief Robert Troy. The two above-captioned cases were consolidated for trial purposes, and a jury trial was held before this Court from April 16 to May 2, 2018. In its verdict, the jury found that Plaintiff Montone's political affiliation and expression about a matter of public concern were substantial or motivating factors in Jersey City's decision not to make promotions from the 2003-2006 Lieutenant's list, and that Plaintiff Montone's conduct, which is protected by the NJ Law Against Discrimination ("NJ LAD"), played a role and made an actual difference in this decision. Docket No. 335 (indicating 'Yes' to questions 1, 2, and 3).

The jury awarded Plaintiff Montone $276,834 in economic damages and did not award damages for emotional distress. Based on handwritten jury notations to trial exhibit P-272, this award appears to modify Plaintiff Montone's' own estimate of her economic losses by subtracting her estimate of 2005 lost wages, 2005-2017 interest on past loss wages, and 2010-2017 interest on past pension loss. See Docket No. 351, Ex. H, "Economic and Financial Losses

of Valerie Montone" (subtracting $4,737, $20,336, and $8,082 respectively from the $309,989 "Total loss," with the resulting $276,834 circled at bottom). As such, the jury did not award Plaintiff Montone prejudgment interest or account for the negative tax consequences of receiving a lump-sum award. The jury awarded approximately $1.9 million in total economic damages for the other eight Plaintiffs. For each Astriab Plaintiff, the damage award exactly corresponds to the damage appraisal from the April 9, 2018 report issued by Plaintiffs' expert Kristin Kucsma. Cf. 2:06-cv-280, Docket No. 335 with 2:06-cv-3790, Docket No. 216, Ex. K, 31. As such, the jury likewise did not award the Astriab Plaintiffs prejudgment interest or account for the negative tax consequences of receiving a lump-sum award.

For all nine Plaintiffs, the jury's award of economic damages includes a present value calculation of the pension differential—accruing annually through the end of Plaintiffs' life expectancy—that results from retiring with a lower police rank. Each Plaintiff will pay taxes on this lump-sum award within one tax year, instead of paying taxes on smaller amounts spread across past and future years. As a result of the progressive income tax structure, there are adverse tax consequences associated with paying taxes on a single lump-sum award within a single tax year as opposed to paying taxes on smaller amounts spread across multiple tax years.

**II.  Discussion**

After a careful review of the applicable case law, this Court is satisfied that Plaintiffs are entitled to an award of prejudgment interest as well as a molded verdict to offset the adverse tax consequences of receiving a lump-sum jury award.

**a.  Plaintiffs are Entitled to the Award of Prejudgment Interest**

The jury found that Defendants violated the NJ LAD, codified at N.J. Stat. Ann. § 10:5. See Docket No. 335 (indicating 'Yes' to questions 2). The statute provides a broad set of

remedies to prevailing plaintiffs. N.J. Stat. Ann. § 10:5-13 ("All remedies available in common law tort actions shall be available to prevailing plaintiffs"). To effectuate its antidiscrimination policies, the statute codifies a "legislative finding[] and declaration[]" that damages available to prevailing plaintiffs under the NJ LAD "shall be liberally construed in combination with other protections available under the laws of this State." N.J. Stat. Ann. § 10:5-3.

Under the New Jersey Rules of Court, prejudgment interest is available to prevailing plaintiffs in tort actions under certain circumstances:

> Except where provided by statute with respect to a public entity or employee, and except as otherwise provided by law, the court shall, in tort actions, including products liability actions, include in the judgment simple interest, calculated as hereafter provided, from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest.

N.J. Ct. R. R. 4:42-11. This rule contains a presumption in favor of granting prejudgment interest. Potente v. Cty. of Hudson, 187 N.J. 103, 114 (N.J. 2006) ("What the rule actually says is that pre-judgment interest *shall* be awarded against all defendants *unless* it is prohibited by applicable law.") (emphasis in original). In light of the broad remedies available under the NJ LAD, the New Jersey Supreme Court has held that the presumption in favor of granting prejudgment interest applies to prevailing plaintiffs under the NJ LAD. Id. at 114.

Plaintiffs who have been awarded backpay damages under Title VII, codified at 42 U.S.C. §2000e-1 et seq, are entitled to a "strong presumption in favor of awarding prejudgment interest." Booker v. Taylor Milk Co., 64 F.3d 860, 868 (3d Cir. 1995). While this Court has discretion not to award prejudgment interest, it may "exercise its discretion to depart from this presumption only when it provides a justification that reasonably supports the departure." Id. at 868; see also Nance v. City of Newark, 501 F. App'x 123, 129 (3d Cir. 2012) ("Thus, to the extent ... that the damages awarded to the plaintiff represent compensation for lost wages, it is

ordinarily an abuse of discretion *not* to include pre-judgment interest.") (citing Gierlinger v. Gleason, 160 F.3d 858, 873 (2d Cir. 1998)) (emphasis in original). Plaintiffs who have been awarded backpay damages under 42 U.S.C. §1983 are likewise entitled to a presumption in favor of prejudgment interest. Nance, 501 F. App'x at 131.

Notwithstanding the clear presumption in favor of prejudgment interest, Defendants argue that such an award is inappropriate here because the "jury intentionally and willfully removed" prejudgment interest from its award and therefore Plaintiffs seek "to override the jury's verdict and award the specific monies that the jury determined were not recoverable or should not be awarded as damages." Defs. Br. 6. This argument is not persuasive. First, the jury rendered a general verdict, which merely asked the jury to determine "the amount of money that would fully and fairly compensate plaintiff" for economic damages. Docket No. 335, 2. The verdict contained no special interrogatories regarding prejudgment interest, nor any indication by the jury that such prejudgment interest was not appropriate. While Defendants make a colorable argument that the handwritten annotations to the trial exhibit evince the jury's disinclination to award prejudgment interest, those notes are subject to multiple interpretations. In any case, such notes are pre-verdict and do not themselves constitute the verdict. Even if the notes were unambiguous, Defendants provide no caselaw authority for the proposition that this Court is bound by such pre-verdict handwritten notes. As such, Defendants' argument does not overcome the strong presumption in favor of granting prejudgment interest to Plaintiffs, and this Court will accordingly grant such relief.

### b. Plaintiffs are Entitled to Molding the Verdict to Offset the Negative Tax Consequences of Receiving a Lump-sum Jury Award

As noted above, the NJ LAD entitles prevailing plaintiffs to a broad set of remedies. New Jersey courts have interpreted this mandate for broad, liberally construed remedies to include

5

compensating prevailing plaintiffs for the negative tax consequences associated with receiving a lump sum award. Quinlan v. Curtiss-Wright Corp., 409 N.J. Super. 193, 201 (N.J. App. Div. 2009), rev'd on other grounds, 204 N.J. 239 (N.J. 2010) ("Under the 'make whole' policies of N.J.S.A. 10:5–3, a defendant is called upon to compensate a plaintiff for the negative consequences of receiving a lump sum award of economic damages."); Ferrante v. Sciaretta, 365 N.J. Super. 601, 607 (N.J. Law. Div. 2003) ([U]nder the 'make whole' policies of the statute, defendants will be required to compensate plaintiff for the negative tax consequences of receiving the lump sum award.").

No Third Circuit court has yet addressed this issue with respect to the NJ LAD. Nevertheless, "New Jersey courts generally interpret the LAD by reliance upon federal court decisions construing the analogous federal antidiscrimination statutes." Chisolm v. Manimon, 97 F.Supp.2d 615, 621 (D.N.J. 2000), rev'd on other grounds, 275 F.3d 315 (3d Cir. 2001). One such analogous federal antidiscrimination statute is the American with Disabilities Act ("ADA"). In addressing this issue with respect to the ADA, the Third Circuit held that "a district court may, pursuant to its broad equitable powers granted by the ADA, award a prevailing employee an additional sum of money to compensate for the increased tax burden a back pay award may create." Eshelman v. Agere Sys., Inc., 554 F.3d 426, 441-42 (3d Cir. 2009).

Defendants advance two arguments for why Plaintiffs should not receive a molded verdict to adjust for the negative tax consequences of the lump sum award. They argue that there is no binding authority, as the "cases cited by Plaintiffs' [sic] are state law cases (a Law Division and an unpublished, reversed Appellate Division decision)" such that there is "insufficient legal precedent to proceed forward with such an award." Defs. Br. 2. As an initial matter, Defendants inaccurately characterize Quinlan, as that Appellate Division case is a published decision (see

6

409 N.J.Super. 193), and therefore is binding precedent for lower courts in New Jersey, unlike unpublished opinions. See N.J. Ct. R. 1:36-3. Further, the subsequent reversal was on different grounds. It is true that decisions by lower New Jersey courts interpreting questions of state law are instructive rather than binding on this Court. See Nat'l Sur. Corp. v. Midland Bank, 551 F.2d 21, 28 (3d Cir. 1977); Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1167 (3d Cir. 1980) ("In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court would rule. To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions."). Nevertheless, this Court "should look to such [lower court] statements as indicia of how the state's highest court might decide." Pennsylvania Glass, 652 F.2d at 1167 (emphasis added). Here, the Appellate Division's decision is particularly instructive because the New Jersey Supreme Court, despite subsequently reversing the lower court on different grounds, affirmed the lower court's holding that the available remedies under the NJ LAD should be broadly and liberally construed. 204 N.J. 239, 259 (N.J. 2010) ("We have been vigilant in interpreting the LAD in accordance with that overarching purpose, and in recognition that it is, by its terms, *see N.J.S.A.* 10:5–3, remedial legislation that was intended to be given a broad and liberal interpretation. We have been scrupulous in our insistence that the Law Against Discrimination be applied to the full extent of its facial coverage.") (internal citations omitted) (emphasis added). As such, Quinlan and Ferrante are particularly instructive that the liberally construed "make whole" policies of the NJ LAD militate in favor of molding the verdict to adjust for the adverse tax consequences from a lump sum award. This holding is consistent with the Third Circuit's interpretation of the NJ LAD's federal antidiscrimination analogue in Eshelman.

Defendants argue that the "[u]nderlying expert report lacks any specific justification and clarity as to how the calculations were performed and the substantial additional amounts were ultimately calculated." Defs. Br. 1. Defendants have not submitted an opposing expert report regarding the appropriate calculation of such an offset award, nor have they deposed Plaintiffs' expert regarding this issue. Instead, Defendants' moving papers attack the legal basis behind such an award. Before determining the appropriate amount by which to mold the verdict, this Court will accordingly grant Defendants leave to depose Plaintiffs' expert regarding the methodology and calculations contained in her expert report, as well leave to file an expert report in opposition regarding this computation.

### III. Conclusion

**IT IS** on this 23rd day of July, 2018;

**ORDERED** that Plaintiff Valerie Montone's motion to be awarded prejudgment interest (2:06-cv-280, Docket No. 351) is **GRANTED**; and further

**ORDERED** that Astriab Plaintiffs' motion to be awarded prejudgment interest (2:06-cv-3790, Docket No. 216) is **GRANTED**; and further

**ORDERED** that the Astriab Plaintiffs' motion to amend/correct its estimate of the appropriate prejudgment interest for Plaintiff Ezio Scerbo (2:06-cv-3790, Docket No. 218) is **GRANTED**; and further

**ORDERED** that jury's verdict shall be modified to include the following amounts in prejudgment interest:

    Plaintiff Valerie Montone: $28,418;

    Plaintiff John Astriab: $24,596.91;

    Plaintiff Clyde Banks: $26,133.67;

Plaintiff James Buckley: $26,406.48;

Plaintiff William Cullinane: $27,965.45;

Plaintiff Richard DeStefano: $26,234.24;

Plaintiff David LaBruno: $25,428.33;

Plaintiff Ezio Scerbo: $7,929.78;

Plaintiff John Whalen: $39,728.6437; and further

**ORDERED** that Plaintiffs' motion to mold the verdict to offset the negative tax consequences of receiving a lump-sum jury award (2:06-cv-280, Docket No. 351; 2:06-cv-3790, Docket No. 216) is **GRANTED**; and further

**ORDERED** that Defendants are granted leave to depose Plaintiffs' expert regarding the methodology for calculating the negative tax consequences of the lump-sum award; and further

**ORDERED** that Defendants are granted leave to issue an expert report in opposition regarding the appropriate calculation of such amounts.

   /s Stanley R. Chesler\_\_\_
STANLEY R. CHESLER
United States District Judge